| | | |
|---|---|---|
| **HUNTER HIDALGO, PH.D.** | * | **NO. 2024-C-0609** |
| **VERSUS** | * | |
| | | **COURT OF APPEAL** |
| **BOARD OF SUPERVISORS OF** | * | |
| **LOUISIANA STATE** | | **FOURTH CIRCUIT** |
| **UNIVERSITY AND** | * | |
| **AGRICULTURAL AND** | | **STATE OF LOUISIANA** |
| **MECHANICAL COLLEGE ON** | * * * * * * * | |
| **BEHALF OF LOUISIANA** | | |
| **STATE UNIVERSITY HEALTH** | | |
| **SCIENCES CENTER–NEW** | | |
| **ORLEANS; ET AL.** | | |

APPLICATION FOR WRITS DIRECTED TO
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2022-07358, DIVISION "F-14"
Honorable Jennifer M. Medley, Judge
* * * * * *
**Judge Dale N. Atkins**
* * * * * *

(Court composed of Judge Paula A. Brown, Judge Dale N. Atkins, Judge Karen K. Herman)

**ON APPLICATION FOR REHEARING**

Liz Murrill, Attorney General
Phyllis E. Glazer, Assistant Attorney General
LOUISIANA DEPARTMENT OF JUSTICE
LITIGATION DIVISION
1885 N. Third Street, 3rd Floor
Baton Rouge, Louisiana 70802

Darren A. Patin
Special Assistant Attorney General
3445 North Causeway Blvd., Suite 800
Metairie, Louisiana 70002

Dennis J. Phayer
Special Assistant Attorney General
5213 Airline Drive
Metairie, Louisiana 70001

COUNSEL FOR RELATORS, the Board of Supervisors of Louisiana State
University and Agricultural and Mechanical College on Behalf of Louisiana

State University Health Sciences Center-New Orleans ("LSUHSC-NO");
Dr. Steve Nelson in his official capacity as the Interim Chancellor of
LSUHSC-NO; Dr. Richard DiCarlo in his official capacity as the Interim
Dean of the School of Medicine at LSUHSC-NO; Dr. Demetrius J. Porche in
his official capacity as the Interim Vice Chancellor for Academic Affairs at
LSUHSC-NO; and Dr. Angela Amedee in her official capacity as the
Interim Dean of the School of Graduate Studies at LSUHSC-NO

Ellie T. Schilling
Benjamin O. Flaxenburg
SCHONEKAS, EVANS, MCGOEY & EACHIN, L.L.C.
909 Poydras Street, Suite 1600
New Orleans, Louisiana 70112

COUNSEL FOR RESPONDENT, Hunter Hidalgo, PhD

**APPLICATION FOR REHEARING GRANTED; JUDGMENT VACATED
IN PART
NOVEMBER 4, 2024**

DNA

PAB

KKH

The underlying dispute in this matter concerned a medical student's residency application. Relators are the Board of Supervisors of Louisiana State University and Agricultural and Mechanical College ("Board") on Behalf of Louisiana State University Health Sciences Center-New Orleans ("LSUHSC-NO"); Dr. Steve Nelson ("Dr. Nelson") in his official capacity as the Interim Chancellor of LSUHSC-NO; Dr. Richard DiCarlo ("Dr. DiCarlo") in his official capacity as the Interim Dean of the School of Medicine at LSUHSC-NO; Dr. Demetrius J. Porche ("Dr. Porche") in his official capacity as the Interim Vice Chancellor for Academic Affairs at LSUHSC-NO; and Dr. Angela Amedee ("Dr. Amedee") in her official capacity as the Interim Dean of the School of Graduate Studies at LSUHSC-NO (collectively "Defendants" or "Relators"). They filed an Application for Rehearing regarding our September 25, 2024 Writ Opinion, wherein we reviewed the trial court's September 24, 2024 judgment. For the following reasons, we grant Relators' application for rehearing, and we vacate the trial court's September 24, 2024 judgment in part.

1

**RELEVANT FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

In our September 25, 2024 Writ Opinion, we summarized the relevant factual background and procedural history in this matter as follows:

On August 16, 2022, Dr. [Hunter] Hidalgo, filed a "Verified Petition for Injunctive Relief and Damages" ("Petition") in Orleans Parish Civil District Court. Therein, Dr. Hidalgo named the following as defendants: the Board; Dr. Steve Nelson; Dr. DiCarlo; Dr. Porche; and Dr. Amedee (hereinafter "Defendants"). In his Petition, Dr. Hidalgo alleged that Defendants' handling of scientific misconduct allegations regarding his thesis dissertation research both materially and prejudicially deviated from LSUHSC-NO's stated policies and procedures and from the requirements of federal law, thereby breaching LSUHSC-NO's obligations to him and violating his due process rights.

Ultimately, the matter proceeded to a jury trial, beginning on January 8, 2024, and ending on February 5, 2024, after which the jury rendered a verdict in favor of Dr. Hidalgo. Then, on February 7, 2024, the trial court signed a judgment in accordance with the jury's verdict. That judgment ordered, in pertinent part, that Defendants were prevented from revoking Dr. Hidalgo's PhD; were compelled to re-enroll Dr. Hidalgo in the School of Medicine at LSCHSC-NO; and were compelled to vacate the finding of scientific misconduct and expunge Dr. Hidalgo's record and transcript of the finding and associated sanction.

Subsequently, on September 22, 2024, Dr. Hidalgo filed [an] Emergency Contempt Motion. Therein, Dr. Hidalgo contended that the trial court's "[j]udgment and permanent injunction [were] . . . abundantly clear that Dr. Hidalgo's educational record and transcript must be vacated and expunged of the misconduct findings and sanction associated with [his dissertation] case." Nonetheless, according to Dr. Hidalgo's Emergency Contempt Motion, he learned that [part of] his pending application to medical residency programs, which he referred to as the "MSPE," stated, in relevant part:

> **Attainment of Professional Standards**:
> With the exception of the incident described below, Hunter has met professional standards.
> [ ]
> In April, 2021, Hunter published his PhD thesis containing data that is statistically unlikely and cannot be replicated upon peer review. The standards of professionalism expected of a physician would require him, as the sole author, to retract the thesis and re-run the data so that the thesis can be published with data that can

2

be replicated upon peer review. As of the date of this writing, the publication has not been retracted or re-run.

Dr. Hidalgo contended that the above notation was "improper" and was "obviously taken from [his] educational records, which [LSUHSC-NO] . . . failed to expunge in direct violation and defiance of the permanent injunction and [the trial court's] [February 7, 2024] [j]udgment." Dr. Hidalgo further asserted that LSUHSC-NO "should be held in contempt and sanctioned for . . . willful failure to abide by the Permanent Injunction and Judgment of th[e] [c]ourt dated February 7, 2024."

On September 23, 2024, the trial court conducted a hearing on Dr. Hidalgo's Emergency Contempt Motion, after which the trial court ordered the Defendants and their attorneys to amend Dr. Hidalgo's MSPE by 4:00 p.m. that day for the court's review. In response, Defendants amended the MSPE by removing all of the challenged language but left the section titled "Attainment of Professional Standards" blank. Counsel for Dr. Hidalgo objected to this and argued to the trial court—via an email to the trial court judge's law clerk—that the trial court had actually ordered the Defendants to affirmatively state that "Hunter has met professional standards." The trial court agreed with counsel for Dr. Hidalgo and, at 10:00 a.m. on September 24, 2024, signed another judgment. In pertinent part, that judgment granted Dr. Hidalgo's Emergency Contempt Motion; held Defendants and their counsel in contempt of court; and further ordered Defendants to amend Dr. Hidalgo's MSPE by deleting all of their original language under the heading "Attainment of Professional Standards" except for the inclusion of the sentence "[Dr. Hidalgo] has met professional standards."

*Hidalgo v. Bd. of Supervisors of La. State Univ. & Agric. & Mech. Coll. on Behalf of La. State Univ. Health Scis. Ctr.-New Orleans*, 2024-0609, pp. 2-4 (La. App. 4 Cir. 9/25/24), ___ So.3d ___, ___, 2024 WL 4284307, at *1-2 (footnotes omitted).

The trial court's September 24, 2024 judgment further stated, however, that the part of the judgment holding Defendants and their counsel in contempt of court was "**SUSPENDED** pending an opportunity to purge the violation of the Permanent Injunction and Judgment of February 7, 2024[,] by immediately complying with the orders and decrees set forth herein as well as the plain language of the Permanent Injunction and Judgment of February 7, 2024."

3

Additionally, the judgment ordered the parties to appear before the trial court regarding the contempt finding at a future hearing scheduled for October 3, 2024.

That same day, September 24, 2024, Relators filed an application for expedited supervisory review of the trial court's September 24, 2024 judgment. In their emergency writ application to this Court, they asserted, in pertinent part, as their second assignment of error that "[t]he trial court erred by holding [Relators] and three of their attorneys in contempt." In arguing this assignment of error, they contended that "[t]he trial court erred by granting [Dr. Hidalgo]'s motion for contempt without complying with La. [C.C.P. art.] 22[5]." They requested that this Court reverse the trial court's September 24, 2024 judgment and deny Dr. Hidalgo's Emergency Contempt Motion in its entirety. In addressing their second assignment of error, we stated, "[B]ecause the trial court suspended the contempt finding and has scheduled a contempt hearing [for October 3, 2024], we find Relators' arguments in their second assignment of error to be misplaced and pretermit discussion of same." The trial court ultimately moved up the date of the scheduled contempt hearing from October 3, 2024, to September 26, 2024; and the trial court did in fact conduct a hearing on the contempt issue on September 26, 2024.

**DISCUSSION**

On October 9, 2024, Relators filed the subject Application for Rehearing. Therein, they again argue that the trial court erred in its September 24, 2024 judgment by failing to comply with La. C.C.P. art. 225 because the trial court "convicted [them] of contempt of court without notice or an opportunity to be heard." They assert that this Court then erred in our September 25, 2024 Opinion by pretermitting discussion of their second assignment of error and in stating that

4

the argument contained therein was "misplaced" because the trial court suspended the contempt finding. To this end, they assert that "[t]he 'suspension' of their convictions is irrelevant" because "a suspended conviction is still a conviction." They further explain that the trial court's contempt judgment has not been vacated, replaced, overturned, or otherwise invalidated in the interim, such that the portion of the judgment that convicted each of the Relators and three of their attorneys of contempt of court remains in effect. Accordingly, they argue that we should grant rehearing on this issue and vacate the trial court's September 24, 2024 contempt finding.

"A contempt of court is any act or omission tending to obstruct or interfere with the orderly administration of justice, or to impair the dignity of the court or respect for its authority." La. C.C.P. art. 221. A contempt of court can be direct or constructive. *Id.* "A direct contempt of court is one committed in the immediate view and presence of the court and of which it has personal knowledge, or a contumacious failure to comply with a subpoena or summons, proof of service of which appears of record." La. C.C.P. art. 222. "A constructive contempt of court is any contempt other than a direct one." La. C.C.P. art. 224. The "[w]ilful disobedience of any lawful judgment . . . of the court" is an act that constitutes a constructive contempt of court. La. C.C.P. art. 224(2). Additionally, La. C.C.P. art. 3611 provides that "[d]isobedience of or resistance to a temporary restraining order or preliminary or final injunction is punishable as a contempt of court."

According to La. C.C.P. art. 223, "[a] person who has committed a direct contempt of court may be found guilty and punished therefor by the court forthwith, without any trial other than affording him an opportunity to be heard orally by way of defense or mitigation." To find someone guilty of direct

5

contempt, "[t]he court [must] render an order reciting the facts constituting the contempt, adjudging the person guilty thereof, and specifying the punishment imposed." La. C.C.P. art. 223. Louisiana Code of Civil Procedure Article 225 outlines the "procedure for punishing" for constructive contempt of court. It provides:

> A. Except as otherwise provided by law, a person charged with committing a constructive contempt of court may be found guilty thereof and punished therefor only after the trial by the judge of a rule against him to show cause why he should not be adjudged guilty of contempt and punished accordingly. The rule to show cause may issue on the court's own motion or on motion of a party to the action or proceeding and shall state the facts alleged to constitute the contempt. . . . [A] certified copy of the motion, and of the rule to show cause, shall be served upon the person charged with contempt in the same manner as a subpoena at least forty-eight hours before the time assigned for the trial of the rule.

> B. If the person charged with contempt is found guilty the court shall render an order reciting the facts constituting the contempt, adjudging the person charged with contempt guilty thereof, and specifying the punishment imposed.

La. C.C.P. art. 225.

As this Court has previously explained, a trial court has great discretion in deciding whether to hold someone in contempt of court. *Barak v. Saacks*, 2021-0756, 0757, 0758, 0759, p. 15 (La. App. 4 Cir. 10/12/22), 367 So.3d 656, 666 (quoting *Macquet v. Macquet*, 2019-1097, p. 2 (La. App. 4 Cir. 10/7/20), 306 So.3d 498, 499). Nonetheless, the trial court must abide by the procedure set forth in La. C.C.P. art. 225. *Id.* at p. 16, 367 So.3d at 667 (quoting *Davidson v. Castillo*, 52,727, p. 14 (La. App. 2 Cir. 8/14/19), 276 So.3d 1157, 1166). Thus, unless one commits a direct contempt of court, the trial court must follow La. C.C.P. art. 225's requirements of notice and hearing. *In re T.S.*, 45,194, p. 4 (La. App. 2 Cir.

6

3/3/10), 32 So.3d 1026, 1028 (citation omitted). Failure to do so is a violation of due process and renders the finding of contempt invalid. *Id.*

As noted above, a direct contempt is one committed in the immediate view and presence of the court and of which the court has personal knowledge. Relators' failure to follow the February 7, 2024 permanent injunction and trial court judgment by including reference to the dispute regarding Dr. Hidalgo's PhD thesis data in his MSPE was not an act committed in the immediate view and presence of the trial court judge. Furthermore, the "[w]ilful disobedience of any lawful judgment . . . of the court" is explicitly enumerated as one of the acts that constitutes a constructive contempt of court. La. C.C.P. art. 224(2). Based upon the law and the record, we find that Relators' noncompliance was not a direct contempt of court. As such, the trial court was required to adhere to the procedures set forth in La. C.C.P. art. 225 for punishing a constructive contempt of court.

The record reflects that the trial court held the September 23, 2024 hearing on Dr. Hidalgo's Emergency Contempt Motion less than twenty-four hours after Dr. Hidalgo filed the motion and, according to Relators, approximately three hours after their counsel received oral notice of the time of the hearing. Also according to Relators, no evidence was presented at the hearing before the trial court held Relators and their counsel in contempt.[1] Though, as we previously explained, the trial court ultimately held a hearing on the contempt issue on September 26, 2024, we find that hearing to be of no effect. That is, by the time the trial court conducted that hearing on September 26, 2024, the trial court had already held Relators and their counsel in contempt via the September 24, 2024 judgment, albeit with the

---

[1] This Court does not have a transcript of the September 23, 2024 hearing to be able to confirm this statement.

7

finding suspended, without providing them with the requisite forty-eight hours' notice. Regarding the fact that the trial court suspended the finding of contempt, we agree with Relators' contention in their Application for Rehearing that "a suspended conviction is still a conviction." In sum, the trial court did not follow the forty-eight hour notice requirement set forth in La. C.C.P. art. 225(A) for punishing a constructive contempt of court, and its failure to do so was in violation of Relators' and their attorneys' due process rights. ***This renders the contempt part of the September 24, 2024 judgment invalid, specifically the following sections***:

> **IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that [Dr. Hidalgo]'s Emergency Motion for Contempt, Attorney's Fees, and Court Costs for Violation of Permanent Injunction and Judgment of February 7, 2024 is hereby **GRANTED** as follows:
>
> **IT IS ORDERED** that [Defendants] along with the above-listed counsel and general counsel for Defendants, **Dennis J. Phayer**, **Darren A. Patin**, and **Kevin L. Oufnac**, are **HELD IN CONTEMPT OF COURT** for violating the plain language of Permanent Injunction and Judgment of February 7, 2024.
>
> . . . .
>
> **IT IS FURTHER ORDERED** that Plaintiff's request for reasonable attorney's fees incurred in connection with this matter is **GRANTED**, the amount which will be set by the Court upon further submission by Plaintiff.
>
> **IT IS FURTHER ORDERED** that Plaintiff's request for court costs incurred in connection with this matter is **GRANTED** and that Defendants are ORDERED to immediately pay court costs to Plaintiff in the amount of **$108.00.**
>
> **IT IS FURTHER ORDERED** that the portion of this Order holding Defendants along with the above-listed counsel and general counsel for Defendants, **Dennis J. Phayer**, **Darren A. Patin**, and **Kevin L. Oufnac**, in Contempt of Court is **SUSPENDED** pending an opportunity to purge the violation of the Permanent Injunction and Judgment of February 7, 2024[,] by immediately complying with the orders and decrees set forth herein as well as the plain language of the Permanent Injunction and Judgment of February 7, 2024.

**IT IS FURTHER ORDERED** that the parties shall appear before this Honorable Court for further hearing regarding such Contempt of Court on October 3, 2024 at 1:00 p.m.

Therefore, we grant Relators' Application for Rehearing and vacate the above-quoted contempt sections of the trial court's September 24, 2024 judgment.

## CONCLUSION

For the foregoing reasons, we grant Relators' Application for Rehearing, and we vacate the trial court's September 24, 2024 judgment insofar as it found Relators and their counsel in constructive contempt of court and awarded costs and attorney's fees for same.

**APPLICATION FOR REHEARING GRANTED; JUDGMENT VACATED IN PART**